IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANTHONY OKUNNO,                          §
TDCJ #1448720,                           §
                                         §
            Petitioner,                  §
                                         §
v.                                       §            CIVIL ACTION NO. H-10-2857
                                         §
RICK THALER, Director,                   §
Texas Department of Criminal Justice -   §
Correctional Institutions Division,      §
                                         §
            Respondent.                  §

## MEMORANDUM AND ORDER

State inmate Anthony Okunno (TDCJ #1448720, former TDCJ #1315180, #1227815, #643482) has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from a state court conviction.  The respondent has answered with a motion for summary judgment, arguing that Okunno is not entitled to the relief he seeks.  (Docket No. 8).  Okunno has filed a reply.  (Docket No. 14).  After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion, denies the petition, and dismisses this case for reasons that follow.

## I.     BACKGROUND

A local grand jury returned an indictment against Okunno in connection with an aggravated robbery that went awry, resulting in two deaths (cause number 44,339A).  The State of Texas enhanced Okunno's indictment for purposes of punishment with allegations that he had more than one prior felony conviction.  The State presented evidence at trial showing that, while he was not a principal participant in the robbery, Okunno was criminally responsible as an active

party to the offense.  A jury in the 268th District Court of Fort Bend County, Texas, found Okunno guilty as charged.  After finding that the enhancement allegations were true, the same jury sentenced Okunno to 35 years' imprisonment.

On direct appeal, Okunno argued that the evidence was legally and factually insufficient to support his conviction for aggravated robbery under the Texas "law of parties."[1]  In addition, Okunno complained that the trial court erred by admitting his confession and that his conviction was otherwise improperly based on uncorroborated testimony from an accomplice witness.  An intermediate court of appeals rejected Okunno's arguments and affirmed the conviction after outlining the facts underlying the offense based on evidence presented at trial:

Factual Background

Michael Tornero owned an auto repair and rental business. Yolanda Vallejo worked for an attorney and referred clients to Michael. On April 23, 2006, a Sunday, Yolanda telephoned Michael and arranged to bring a cake to Michael's home. During a conversation the previous Friday, Michael indicated to Yolanda he was "sitting on a lot [of] cash" because he had recently provided rental cars for a large party. Although Yolanda phoned Michael Sunday morning and the Torneros were expecting her earlier in the day, she did not arrive at the Tornero home until around nine o'clock that evening.

When Yolanda arrived, Michael welcomed her into his home. A few minutes later, Michael's wife, Belda, joined them in the kitchen, and Michael introduced them. Both Michael and Belda thought Yolanda seemed nervous. At some point Yolanda left the house and went to her truck to get the cake she purported to give Michael. Intending to show Yolanda the house when she returned, Michael went into a bedroom to straighten the room. Belda stayed in the kitchen and called her daughter, on a cell phone, to discuss plans for that evening.

---

[1]     Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE § 7.01(a) (Vernon 2003).  As it pertains to the charges in this case, a person is "criminally responsible" for an offense committed by the conduct of another, if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  TEX. PENAL CODE § 7.02(a)(2).

2

When Yolanda returned, Michael was still in the bedroom. As Yolanda walked toward the kitchen, Belda saw an Hispanic man, later determined to be Omar Medrano, holding Yolanda and pointing a gun at Belda. Omar told Belda to drop the phone. She immediately dropped the phone and started screaming her husband's name. Omar let Yolanda go and started walking toward the back of the house, pointing the gun and a laser sight "everywhere."

Michael heard Belda screaming, saw the laser light in the hallway, and knew there was a gun.  Michael got his revolver and pointed it at the foyer. He then saw Omar with a gun in his hand.  Michael fired at Omar, but thought he had missed because Omar jumped back and fired four or five times.  Michael pressed an alarm panic button which called the police.  As Fort Bend Sheriff's Detective Tully Mangum arrived, he saw a dark, newer model, Chevrolet Impala, with at least two people, driving away very quickly. Michael and Belda were still in the house.

Yolanda died of a single gunshot wound. The medical examiner subsequently determined a shot fired from Omar's gun had ricocheted off a wall or the floor, striking Yolanda in the head.

*Okunno v. State*, No. 14-07-00680-CR, 2008 WL 4585239, at *1 (Tex. App. ― Houston [14th Dist.] Oct. 16, 2008).  Omar Medrano also died as the result of a gunshot wound that he sustained while perpetrating the armed robbery.

The evidence of Okunno's involvement in the aggravated robbery is outlined in more detail below.  That evidence includes Okunno's statement to police, testimony from another participant in the offense (Monica Deleon), and physical evidence which connects Okunno to the aggravated robbery.  After summarizing all of this evidence, the court of appeals found that there was sufficient evidence to support his conviction as a party to the aggravated robbery.  *See id*., 2008 WL 4585239, at **3-6.  The court of appeals also rejected Okunno's argument that the trial court erred by admitting his statement to police and his claim that the conviction was improperly based on uncorroborated testimony by an accomplice witness.  *See id*., 2008 WL 4585239, at **8-9.   Thereafter, the Texas Court of Criminal Appeals refused Okunno's petition for discretionary review.

Okunno challenged his conviction further by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.  In that application, Okunno raised the following claims: (1) defense counsel was ineffective for (a) failing to request a jury instruction on the Texas law of parties; (b) failing to request a jury instruction that included the definition of reasonable doubt; and (c) failing to challenge the validity of his prior convictions for the purpose of enhancing his punishment; (2) the trial court erred by (a) failing to provide the jury with a definition of reasonable doubt; (b) admitting Okunno's statement into evidence; and (c) failing to make an affirmative finding on whether the offense involved the use of a deadly weapon; (3) there was legally and factually insufficient evidence to support the conviction.  The state habeas corpus court, which also presided over Okunno's trial, recommended that the application be denied.  The Texas Court of Criminal Appeals agreed and denied Okunno's application without a written order.  *See Ex parte Okunno*, No. 73,968-01 (Tex. Crim. App. May 2010).

Okunno, who remains in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), now seeks a writ of habeas corpus to challenge his conviction under 28 U.S.C. § 2254.  The petition filed originally by Okunno includes only two allegations of ineffective assistance by trial counsel, regarding his defense attorney's failure to request certain jury instructions.  (Docket No. 1, at 7).  The respondent has construed the pleadings to raise the following claims: (1) trial counsel was ineffective for failing to request a jury instruction on the law of parties and a definition on the meaning of reasonable doubt; (2) the trial court erred by admitting Okunno's statement into evidence and by failing to make an affirmative finding that a deadly weapon was used to commit the offense; and (3) the

evidence was insufficient to support his conviction.  (Docket No. 8).[2]  Okunno appears to have abandoned his ineffective assistance claims, addressing only the following issues in his reply: (1) whether there was sufficient evidence to support his conviction; (2) whether the testimony against him from an accomplice witness was sufficiently corroborated; and (3) whether the trial court erred by admitting his statement into evidence.  (Docket No. 14).  All of the parties' contentions are discussed further below under the governing federal habeas corpus standard of review.

## II.    STANDARD OF REVIEW

The respondent has filed a motion for summary judgment asking this court to deny relief and dismiss the petition.  Motions for summary judgment are typically governed by Rule 56 of the Federal Rules of Civil Procedure.  In this instance, the respondent's summary-judgment motion must be determined in compliance with the federal habeas corpus statutes.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  To the extent

---

[2]    The respondent references additional claims that were supposedly presented in a motion for leave to amend the petition.  (Docket No. 8, at 2, n.3).  The docket sheet, however, does not contain a motion for leave to amend or an amended petition from Okunno.  The Court notes that Okunno also references several additional claims in his reply to the summary judgment motion.  (Docket No. 14).  In the interest of judicial economy, and in deference to Okunno's status as a *pro se* litigant, the Court will address all of the claims referenced by the parties as if they had been raised in an amended pleading.

that the petitioner's claims were "adjudicated on the merits" in state court, the AEDPA standard found at 28 U.S.C. § 2254(d) applies.[3]

Claims presenting pure questions of law and mixed questions of law and fact are governed by 28 U.S.C. § 2254(d)(1), which precludes habeas relief unless a petitioner demonstrates that the state court's decision to deny a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1); *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).  A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.  *See Brown v. Payton*, 544 U.S. 133, 141 (2005).  Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.

The Supreme Court has clarified that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, —

---

[3]    In addition, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

U.S. ─, 131 S. Ct. 1388, 1398 (2011).  Additional limitations on federal review apply.  A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well.  *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).  Where pure questions of fact are concerned, a petitioner is not entitled to relief unless he demonstrates that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see also Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008).

As this deferential standard reflects, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).  In that respect, the AEDPA standard "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Harrington v. Richter*, ─ U.S. ─, 131 S. Ct. 770, 786 (2011).  The Supreme Court has underscored the extent of this deferential standard:

> [28 U.S.C. § 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.  The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision.  *See Early v. Packer*, 537 U.S. 3, 7 (2002); *see also Richter*, ─ U.S. ─, 131 S. Ct. at 785 (confirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").  Thus, a federal habeas corpus court's inquiry is not altered where the state court denies relief without a written opinion.  *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  The petitioner's claims are examined below under the applicable legal standard.

## III.   DISCUSSION

As outlined above, the State presented evidence at trial showing that Okunno was guilty of committing aggravated robbery under a theory of party responsibility.  The pleadings raise several issues, which the Court will address in the following order: (1) the sufficiency of the evidence; (2) the admissibility of Okunno's statement to police;  (3) the accomplice-witness testimony; (4) the trial court's alleged failure to make a finding that a deadly weapon was used in the commission of the underlying offense; and (5) the claims of ineffective assistance of counsel.

### A.   Sufficiency of the Evidence

Okunno contends that there was "no evidence" showing that he intended to commit aggravated robbery and that he was entitled to a judgment of acquittal.  (Docket No. 14, at 16-17).  Okunno contends further the State failed to meet its burden of proof regarding every element of the offense.  (*Id.* at 17).  Liberally construed, Okunno appears to challenge the factual and the legal sufficiency of the evidence in support of his conviction.

To the extent that Okunno challenges the factual sufficiency of the evidence in support of the jury's verdict against him, he fails to articulate a valid claim.  Importantly, challenges to the

factual sufficiency are not cognizable on federal habeas corpus review.  A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  The Texas factual-sufficiency standard of review is based on state law.  *See Clewis v. State*, 922 S.W.2d 126, 131-34 (Tex. Crim. App. 1996).  A federal habeas court does not sit as a super state supreme court for review of issues decided by state courts on state law grounds. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).  On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted).  Because a challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable for this type of claim.

Okunno also appears to challenge the legal sufficiency of the evidence.  As noted above, on federal habeas corpus review of a state court conviction this inquiry is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002).  This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  In conducting that review, a federal

habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict.  *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

The record reflects that Okunno was charged with aggravated robbery.  After a lengthy recitation of the evidence against him, the state court of appeals rejected Okunno's claim that the evidence was insufficient to support his conviction as a party to the charged offense:

> In his first issue, [Okunno] argues the evidence is insufficient to support his conviction for aggravated robbery under the law of the parties. [Okunno] argues there was no evidence that (1) he did anything or agreed to do anything in connection with the offense before it occurred, (2) he was criminally responsible for the aggravating element of the offense (deadly weapon), and (3) he was criminally responsible for the conduct of Omar, Yolanda, or the other actors. [Okunno] frames his argument in "no evidence" or legal insufficiency terms, but requests remand for a new trial, the remedy when the evidence is factually, but not legally, insufficient.  We therefore conduct both reviews.
>
> In considering a legal-sufficiency challenge, we review all evidence in the light most favorable to the finding and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In examining a factual-sufficiency challenge, we view all evidence in a neutral light and set aside the verdict "'only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.'"  *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (quoting *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)).  Before we may reverse for factual insufficiency, we must first conclude with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  As the court of criminal appeals recently explained:
>
>> Both legal and factual sufficiency standards require the reviewing court to consider all of the evidence. "The difference between the two standards is that the former requires the reviewing court to defer to the jury's credibility and weight determinations while the latter permits the reviewing court to substitute its judgment for the jury's on these questions 'albeit to a very limited degree.'"  In reality, a "factual-sufficiency review is 'barely distinguishable' from a *Jackson v. Virginia* legal sufficiency review."

*Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) (citations omitted).

A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2003). The offense is aggravated if the person uses or exhibits a deadly weapon. *Id*. § 29.03(a)(3). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id*. § 7.01(a).   "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id*. § 7.02(a)(2).

"'In determining whether the accused participated as a party, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)).   The State may prove party status with circumstantial evidence. *Id*.

Mere presence at the scene of the offense does not establish guilt as a party to the offense.   *Porter v. State*, 634 S.W.2d 846, 849 (Tex. Crim. App. [Panel Op.] 1982).   Presence at the scene, however, is a circumstance tending to prove guilt which, when combined with other facts, may suffice to show that the accused was a participant. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1979).   Although flight alone will not support a "guilty" verdict, evidence of flight from the scene of the offense is also a circumstance from which an inference of guilt may be drawn. *Id*.

In the present case, [Okunno]'s statements, testimony from co-participant Monica Deleon, and physical evidence connect [Okunno] with the aggravated robbery and establish his responsibility.[4]   That evidence relates to events before, during, and after the robbery.

**Events leading to the robbery.**   In his statement to Officer Rivera, [Okunno] described how he met Omar a few days before the robbery.   Shortly after they met, Omar told [Okunno] he did not trust his present bodyguard, Guero, but did trust [Okunno].

---

[4]   As discussed in issues two and three, respectively, we conclude the trial court correctly exercised its discretion in admitting [Okunno]'s statement, and Deleon's testimony was sufficiently corroborated to support [Okunno]'s conviction.

According to [Okunno], around 6:00 p.m. on the night of the robbery, Omar called [Okunno] and asked,  "'Do you want to make some money and ride with us?'  "[Okunno] admitted he "kind of knew what Omar meant by making some money, because when I first met him he asked me to sale [sic] dope for him, but I told him that I am not interested."  [Okunno] then described the following events:  Omar and "an Hispanic girl" picked [Okunno] up around 7:00 p.m. at the motel where he was living and drove him to a gas station, where they met people in three other vehicles; they then drove to a Wendy's, where Omar told [Okunno] what he was going to do, *i.e.*, meet business partners "that did him wrong and owed him lots of money." [Okunno] stated:

> Omar told me that it was a million dollar deal. I was sitting in the back seat, Omar was in the front passenger side and the Hispanic girl was driving. Omar handed me a 40 caliber Glock with no clip and told me "that's for you".  I gave it back to him and told him that I could not go out like that.  Omar told me that all he wanted me to do was watch his back and for me and the girl to be outside in case something when wrong. He told me that we were not going to be involved.

[Okunno] further stated that, while they were at Wendy's, Omar took the Glock from [Okunno] and gave it to Guero. [Okunno] moved to the front seat, and Guero returned to the car and put a shopping bag on the floorboard. [Okunno] looked in the bag and saw what "appeared to be a 9MM UZI, silver in color."[5]  An Hispanic male carrying a sawed-off shotgun wrapped in blue sheet got in the back seat. Omar then told [Okunno]:  "'[T]his is the deal, it's an inside job, the white girl driving the truck is going to deliver a cake to the man who lives at the house we were going to. . . .'  [W]hen the girl went to the door and the man opened it she was going to go inside and when she came back outside that was when he, Guero and Monster were going to go inside."[6]

Deleon's testimony describing events that occurred just before she and Omar met [Okunno] and her arrival at the scene of the robbery generally paralleled [Okunno]'s statement.  Shortly before Deleon and Omar left Omar's mother's house the night of the robbery, Omar asked Deleon whether she would

---

[5]   Later in his statement, [Okunno] said:

At the time that Omar handed the first gun I said "NO" and gave it back to him. When he handed me the second gun that was in the bag, I felt that I could not say no because the guy sitting behind in the car had a shotgun, so I felt that I had to go along with them the best way I could and felt that I was in danger and could be shot if I did not go along with them.

[6]   Monster is not otherwise identified.

like to make some money and told her it was a "million dollar mission." Omar told her it would not be dangerous; all she had to do was wait by the side of the house for Omar to exit.

Before Deleon and Omar left to meet [Okunno], two other vehicles appeared at Omar's mother's house.  Frank Medrano, Omar's brother, and a female were in one of the vehicles.  A woman was in the second vehicle, a green Avalanche truck.

Deleon and Omar met [Okunno] at the motel where [Okunno] was living. Deleon was driving her car, a black Camry.  [Okunno] got in the back seat, and they drove to a gas station, where they met the person in the green Avalanche. During the trip, Omar was communicating with someone on a walkie talkie.

From the gas station, they drove to a Wendy's.  On the way, while Deleon was stopped at a traffic signal, another male entered the vehicle and sat in the back seat. Deleon initially knew him as "Black," and later as Egbert Trevino.

After [Okunno], Deleon, Omar, and Trevino arrived at Wendy's, two Avalanches appeared.  The woman Deleon had seen earlier in the Avalanche was now accompanied by a male.  A blonde woman Deleon later learned was Yolanda Vallejo was driving the other Avalanche, which Deleon described as "look[ing] just like Omar's."  Finally, Frank, the woman who was with him earlier, and a teenager arrived in Frank's car.  The men got out of the cars and were talking.

Afterwards, [Okunno] got in the front passenger seat of Deleon's car, and Trevino got in the back, on the driver's side.  As Trevino was walking toward Deleon's car, Deleon saw him carrying a black gun which was wrapped in a blanket. Omar then brought a Foley's bag to [Okunno].  [Okunno] took the bag and put it on the floor in the front seat.  [Okunno] removed the gun from the bag, "a little bit, but not all the way."  It was a big silver gun. Deleon also saw bullets in a box in the bag.

The cars then left Wendy's.  According to Deleon, Yolanda and Omar left first in one of the Avalanches.  The other Avalanche left next, then Deleon, and finally Frank. Omar was instructing [Okunno] by means of the walkie talkie.

**At the scene**.  In his statement, [Okunno] described the following events that occurred on the way to, and at, the scene:

> When we left the Wendy's parking lot we drove I-10 west towards the Katy area and took an exit and made [a] left turn to a residential area. Omar called me on my cell phone and tells me that he wanted me and the guy with the shotgun to meet him half way to the door of the house.  I told Omar, "no" that I was not going to

get out and do it.  We were still following each other, the truck that
the [w]hite girl was driving was in front, the Avalanche was [the]
second[.]    [T]he car I was in was third and Omar's brother's
Impala was last.  The White girl parked her truck in front of a
house and we saw the Avalanche leave.  I saw Omar's brother
driving around. . . .  We were driving around trying to find the
Avalanche and then parked where we could see the [w]hite girls
[sic] truck.  After we parked we heard about three to four gunshots
and the Hispanic girl got scared and started the engine and was
going to drive off.  After hearing the gunshots we saw Omar
walking on the sidewalk walking towards us.  The Hispanic male
sitting in the back seat with the shotgun got out of the car and went
to Omar.  When Omar got into the back seat of the car, he said
something in Spanish . . . . I asked what he said and the Hispanic
male said Omar had been shot.

According to Deleon, after they exited the freeway and were in the
subdivision, the Avalanche with Yolanda and Omar stopped in the driveway of a
house.  The other Avalanche kept going, and Deleon never saw it again. Deleon
also kept driving, but Omar contacted [Okunno] on the walkie talkie and told
[Okunno] to direct Deleon to stop.  Deleon initially parked in a cul-de-sac, but
Omar told [Okunno] to return and park anywhere near the house.  As Deleon was
driving toward the house, she passed Frank's car.  A video taken by a surveillance
camera on the Torneros' front porch showed Yolanda, and also two cars, passing
the Torneros' house.

Less than five minutes after Deleon parked, she saw Yolanda leave the
house, go to the truck, and return to the house with Omar holding her by the neck.
When Yolanda and Omar entered the house, [Okunno] and Trevino said, "Get
ready."  Deleon heard two clicks, one to her right, and one behind her.  It sounded
like guns being loaded, but she did not see them.  Deleon then heard three
gunshots and saw Omar running from the house.  Omar fell in the grass about a
yard from Deleon's car.  Trevino exited the car, picked Omar up, and put him in
the backseat.  Omar was covered with, and coughing up, blood. Omar told Deleon
to go, and she drove straight away.  She did not know where Frank was.  As
Deleon was leaving the subdivision, Trevino was trying to contact Frank to tell
him Omar was dead.

**The flight**. In his statement, [Okunno] described leaving the scene of the
robbery:

After Omar got into the car we all panicked and the Hispanic girl
begins to drive very fast and I had to calm her down, so we could
do something, get some help for Omar. I still had the UZI in front
of me it was still in the bag. As we were driving around I wrapped
the UZI in some clothing and tossed it out of the car. I believe I

saw a sign that said Westhemier [sic], but I am not certain. The Hispanic male with the shotgun also tossed the shotgun out the window somewhere on the feeder road of I-10.

As we drove around trying to make a decision on what to do, Omar's brother called the Hispanic male . . . . The Hispanic male told me that Omar's brother wanted us to get Omar out of the car and call 911 so that he could be picked up. . . . I told them that I was going to call 911 and the Hispanic male and Omar's brother said not to because we would all go to jail. I decided to call 911 because Omar needed help.

According to Deleon, when they finally were out of the subdivision, they came to a bridge over "kind of like a bayou." [Okunno] opened the window and threw the gun over the bridge. Trevino did not dispose of his gun at that time.

[Okunno], Deleon, and Trevino eventually stopped at a restaurant parking lot. Trevino got Omar's clothes, and, at that point, Deleon saw a bullet proof vest. Trevino gave Omar's clothes to [Okunno], and he threw them and the bullet proof vest into a dumpster.

According to Deleon, as they drove on, Trevino and Frank were talking with each other, trying to determine where to meet and what to do. Trevino eventually called 911 and told Deleon to stop the car. Trevino and [Okunno] removed Omar's body from the car and left it by a bush. [Okunno], Deleon, and Trevino then met Frank in another parking lot. Deleon believed that, at some point, Frank called 911. Everyone returned to Omar's body, and a few minutes later the police and an ambulance arrived.

**Statements and evidence collected at the site of Omar's body**. Harris County Sheriff's Department Investigator Felipe Rivera talked briefly with [Okunno] at the site of Omar's body. [Okunno] told Rivera where he could find the bullet-proof vest. [Okunno] also told Rivera about disposing of the UZI somewhere on Westheimer. Officers recovered a Glock .40 caliber weapon, a laser sight, .40 caliber ammunition, and a Foley's bag in the area around Omar's body. There were two cars present: a Toyota Camry and an older model Impala. Officers found blood spatter and live gun shot shells in the back seat of the Toyota.

**Summary**. The evidence established that [Okunno] was with Omar and the other co-participants for at least two hours before the robbery. [Okunno] "kind of knew what Omar meant by making some money." [Okunno] knew of the plan to have Yolanda deliver a cake as a means of gaining entry into the Torneros' house. [Okunno] knew Omar wanted [Okunno] there to "watch his back . . . in case something went wrong." At least from the point when everyone met at

15

Wendy's, [Okunno] knew guns were involved.  On the way to the robbery, Omar was giving [Okunno] instructions via a walkie talkie or cellular phone, and [Okunno] was conveying them to Deleon.  [Okunno] was within arm's reach of an UZI.  While in the car outside the victims' house, [Okunno] would have been in a position to see how Omar held Yolanda as they went toward or into the house.  When Yolanda and Omar entered the house, [Okunno] and Trevino said, "Get ready," and Deleon heard two clicks, one to her right, and one behind her.  [Okunno] disposed of the UZI and Omar's bullet proof vest after the robbery. . . .

*Okunno*, 2008 WL 4585239, at **3-6 (emphasis and footnotes in original).  After considering "all the evidence in the light most favorable to the verdict," the court of appeals concluded that "a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt."  *Id.* at *6 (citing *King*, 29 S.W.3d at 562).  In doing so, the state court found that "the evidence was legally and factually sufficient to support [Okunno]'s conviction of aggravated robbery as a party to the offense."  *Id.*

Where, as here, a state appellate court has reviewed the sufficiency of the evidence, that court's opinion is entitled to "great weight."  *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985) (citing *Jackson*, 443 U.S. at 310, n. 15); *see also Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference").  As indicated above, the AEDPA presumes the correctness of state court findings of fact, and places a "clear and convincing" burden on the petitioner who attempts to rebut that presumption.  28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 455 U.S. 591, 597 (1982) (holding that findings by a state appellate court are entitled to the same deference owed to findings by trial courts).  Okunno has not attempted to rebut any of the fact findings and, therefore, the state court's findings are presumed correct for purposes of federal habeas corpus review.

In this instance, Okunno appears to contend that there was insufficient evidence because the testimony against him from Cynthia Deleon and the investigating officers was circumstantial and based on "speculation." (Docket No. 14, at 16-17). To the extent that Okunno asks this Court to re-weigh the evidence and decide if the jury's decision was correct, this type of inquiry is "beyond the scope of review" permitted under the *Jackson v. Virginia* standard. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) (discussing the standard for challenges to the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979)). As set forth above, the evidence is sufficient under the *Jackson* standard, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Under this standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted).

Based on its own review of the record, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Okunno fails to show that the jury's verdict lacked sufficient evidence or that the state court unreasonably applied the *Jackson v. Virginia* standard. Because Okunno does not demonstrate that relief is warranted under the governing federal habeas corpus standard of review, the respondent is entitled to summary judgment on this claim.

### B.      Admissibility of Okunno's Statement to Police

Okunno argues that the trial court erred by admitting his statement to police into evidence without first making an independent finding about whether he was "in custody" when the statement was given and whether that statement was voluntarily made. (Docket No. 14, at 13-14). Okunno claims further that the trial court erred by not instructing the jury to consider the

voluntariness of his statement.  (*Id.* at 14).  Noting that these claims were rejected on direct appeal, the respondent maintains that Okunno does not meet his burden to show that he is entitled to relief under 28 U.S.C. § 2254(d).  (Docket No. 8, at 18-20).

Here, Okunno contends that his confession was not voluntarily made and admitted into evidence in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), which generally precludes the use of involuntary statements made during custodial interrogation against an accused at trial.  In *Miranda*, the Supreme Court outlined certain rights of which suspects must be advised by law enforcement officers before custodial interrogation takes place.  *See id.*, 384 U.S. at 478-79.  These rights include: (1) the right to remain silent; (2) that any statement made may be used against them at trial; (3) the right to the presence of an attorney during questioning; and (4) if a suspect cannot afford an attorney, one will be appointed for him.  *See id.*  These familiar procedural safeguards, commonly known as "*Miranda* rights," are designed to protect an accused's Fifth Amendment privilege against self-incrimination during custodial interrogation.[7] *See Gachot v. Stalder*, 298 F.3d 414, 418 (5th Cir. 2002).  It is well established that, once an accused has invoked these rights, he is "not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

Of course, a suspect may waive his *Miranda* rights.  *See Maryland v. Shatzer*, ─ U.S. ─, 130 S. Ct. 1213, 1219 (2010) (citing *Miranda*, 384 U.S. at 475).  To establish that such a waiver is valid, "the State must show that the waiver was knowing, intelligent, and voluntary" under the

---

[7]     The Fifth Amendment privilege against self-incrimination provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

standard found in *Johnson v. Zerbst*, 304 U.S. 458 (1938), which requires proof of an intentional

relinquishment or abandonment of a known right or privilege.  *Shatzer*, 130 S. Ct. at 1210 (citing

*Miranda*, 384 U.S. at 475).   A voluntary statement based on a valid waiver is admissible in a

criminal trial.  *Miranda*, 384 U.S. at 478; *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

The test for determining voluntariness is well-established:

> Is the confession the product of an essentially free and unconstrained choice by its
> maker?  If it is, if he has willed to confess, it may be used against him. If it is not,
> if his will has been overborne and his capacity for self-determination critically
> impaired, the use of his confession offends due process.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (internal quotation marks and citation

omitted).  To demonstrate that an inculpatory statement was involuntary, the defendant bears the

burden to show that but for police coercion he would not have given the confession. *See*

*Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986); *Muniz v. Johnson*, 132 F.3d 214, 219 (5th

Cir. 1998).  To meet this burden, a defendant must show that it resulted from coercive police

conduct by establishing a link between the alleged coercive conduct and the defendant's

confession.  *See Connelly*, 479 U.S. at 163-65; *Hopkins v. Cockrell*, 325 F.3d 579, 584 (5th Cir.

2003).

The state court found that Okunno failed to make the requisite showing that his

confession was involuntarily made or improperly admitted:

> In his second issue, [Okunno] contends the trial court erred in admitting
> the statement [Okunno] made to Officer Rivera.   [Okunno] gave his statement at
> the Sheriff's detective bureau office between 8:00 and 9:30 a.m. the morning after
> Harris County officers had responded to an 11:00 p.m. call regarding Omar
> Medrano's homicide and had transported five persons, including [Okunno], from
> that location to the bureau office.[8]   The officers conducted the interviews in
> separate cubicles at the bureau office.

---

[8]     Although Officer Fikaris referred to six persons, Officer Rivera referred to only five.

[Okunno] did not file a pretrial motion requesting the trial court to suppress the statement.  [Okunno] objected at trial only after defense counsel had referred to specifics of the statement in his opening remarks and Rivera had testified about circumstances under which he took [Okunno]'s statement. [Okunno]'s objection, in its entirety, was as follows:

> Your Honor, I'm going to object because [Okunno] was being detained at the time, although [Rivera] has testified that he could have stopped this at anytime and he was free to leave, but it's obvious that he was surrounded by police officers.  He didn't have a lawyer present.   So whatever consent he gave towards the statement, it was not freely and voluntarily given.  So I'm asking the court to suppress the statement and not allow it into evidence.

[Okunno] now raises three complaints regarding admission of his statement. First, he complains that the trial court did not "make an independent finding outside the presence of the jury as to whether the statement was made under voluntary conditions";[9]   second, that his statement was not freely and

---

[9]    In support, [Okunno] cites section 6 of the Code of Criminal Procedure Article 38.22, which provides:

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause. Such order shall not be exhibited to the jury nor the finding thereof made known to the jury in any manner. Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof. In any case where a motion to suppress the statement has been filed and evidence has been submitted to the court on this issue, the court within its discretion may reconsider such evidence in [its] finding that the statement was voluntarily made and the same evidence submitted to the court at the hearing on the motion to suppress shall be made a part of the record the same as if it were being presented at the time of trial. However, the

voluntarily given because he was in custody at the time he gave the statement; and third, that the trial court did not instruct the jury on the law pertaining to the voluntariness of statements.

**Findings by the trial court**.  On April 18, 2008, this court ordered the appeal abated and directed the trial court "to reduce its findings of fact and conclusions of law on the voluntariness of [Okunno]'s confession and have a supplemental record containing those findings filed with the clerk of this Court . . . ."  *See Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004); *McKittrick v. State*, 535 S.W.2d 873, 876 (Tex. Crim. App. 1976). The trial court has done so.  Therefore, [Okunno]'s first complaint is moot. *Rocha v. State*, 16 S.W.3d 1, 10 (Tex. Crim. App. 2000).

**Voluntariness of the statement**.  [Okunno]'s argument that his statement was involuntary rests solely on his contention he was "in custody" at the time he gave his statement.  He challenges the officers' testimony to the contrary.  The trial court, however, found that the law officers were credible and the defendant was "never in custody during the pertinent time periods." The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

---

state or the defendant shall be entitled to present any new evidence on the issue of the voluntariness of the statement prior to the court's final ruling and order stating its findings.

Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 38.22 § 6 (Vernon 2005).

[Okunno] complains only about the trial court's not having made a finding on voluntariness outside the jury's presence, not about the lack of a hearing outside the jury's presence.  He does not suggest there is any evidence he could have presented other than that elicited from the officers who testified at trial. That evidence did not raise a question of voluntariness.  When an accused gives a statement to law enforcement authorities and testimony at trial does not challenge the voluntariness of the statement, an objection on the grounds of involuntariness, without more, is insufficient to create a fact issue requiring the trial court to conduct an inquiry into whether the statement was made voluntarily. *See Miller v. State*, 666 S.W.2d 269, 273-74 (Tex. App. — Dallas 1984, pet. ref'd), *cited with approval in Moore v. State*, No. 14-89-00008-CR, 1990 WL 151285 at *1 (Tex. App. — Houston [14th Dist.] Oct. 11, 1990, no pet.) (not designated for publication).

Nevertheless, even were we to conclude [Okunno] was in custody at the time he gave his statement, that circumstance would not, in itself, render his statement involuntary.   A statement may be deemed involuntary in three circumstances: (1) noncompliance with Code of Criminal Procedure article 38.22; (2) noncompliance with the dictates of *Miranda v. Arizona*;[10] or (3) a violation of due process or due course of law because the statement was not freely given (e.g., coercion, improper influences, incompetence). *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996).   A confession is involuntary in violation of due process "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *see also Cravin v. State*, 95 S.W.3d 506, 510 n. 3 (Tex. App. — Houston [1st Dist.] 2002, pet. ref'd) ("The Texas Due Course of Law provision has not been held to provide any greater protection than that afforded by the United States Constitution's Due Process Clause.").   A court bases its determination of whether a confession is voluntary on an examination of the totality of the circumstances. *Ramirez v. State*, 116 S.W.3d 55, 58 (Tex. App. — Houston [14th Dist.] 1998, pet. ref'd).   Relevant circumstances for determining whether a defendant's will has been overborne include "length of detention, incommunicado or prolonged interrogation, denying a family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality.   A defendant's characteristics and status, as well as the conduct of the police, are important concerns." *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985) (citations omitted).

Contrary to [Okunno]'s representation on appeal, the face of his statement and Officer Rivera's testimony indicate [Okunno] was read his *Miranda* and statutory rights and waived them.[11]   Uncontradicted testimony supports the trial court's findings that (1) [Okunno] was not under arrest or handcuffed as he was transported to, or while he was at, the bureau office; (2) he was offered something to drink and a bathroom break when he first arrived at the office; (3) he was read his *Miranda* and statutory rights; (4) he indicated he understood his rights by placing his initials next to the rights on his written statement; (5) he never invoked any of his rights; and (6) no one coerced [Okunno] to make a statement.   The trial court did not abuse its discretion in denying [Okunno]'s motion to suppress his statement.    *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) ("We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion.").   [Okunno]'s second complaint is without merit.

---

[10]    384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

[11]    *See Miranda*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694; TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2 (Vernon 2005).

*Okunno*, 2008 WL 4585239, at **6-8 (emphasis and footnotes in original).  The state court of appeals also rejected Okunno's claim that the trial court erred by failing to give the jury an instruction on the issue of voluntariness:

> **Lack of a jury instruction on voluntariness**.  "When the issue [of the voluntariness of the accused's statement] is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement." TEX. CODE CRIM. PROC. ANN. art. 38.22 § 7.  In the present case, however, there was no evidence before the jury raising the question of the voluntariness of [Okunno]'s statement.  Accordingly, the trial court was not required to submit an instruction.  *See Wiley v. State*, 632 S.W.2d 746, 748 (Tex. Crim. App. 1982) (holding no merit in appellant's contention trial court erred by failing to submit voluntariness issue to jury when the record failed to show request for instruction or that issue was raised before jury); *Brownlee v. State*, 944 S.W.2d 463, 468 (Tex. App. — Houston [14th Dist.] 1997, pet. ref'd) (same); *see also Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994) ("[B]efore the requested instruction is required, some evidence must be presented to the jury which raises the issue of voluntariness.").

*Okunno*, 2008 WL 4585239, at *8 (emphasis in original).  Okunno does not dispute any of the findings made by the state court.  Likewise, Okunno does not show that he was denied the benefit of safeguards required by *Miranda* or that his statement was otherwise involuntarily made.  Under these circumstances, Okunno does not establish that the trial court erred by admitting his statement.  Because he does not demonstrate that his statement was involuntary, Okunno likewise fails to show that the trial court erred by not giving the jury an instruction on the issue of voluntariness.  Okunno has not otherwise shown that the state court's decision to reject his claims was contrary to, or resulted in an unreasonable application of, clearly established Supreme Court precedent.  Thus, he is not entitled to relief on this issue under 28 U.S.C. § 2254(d).

## C.    Accomplice-Witness Testimony

Okunno complains further that the accomplice-witness testimony given at trial by Monica Deleon was not sufficiently corroborated to sustain his conviction.  (Docket No. 14, at 7).

Okunno explains that, under the "accomplice-witness rule" found in article 38.14 of the Texas Code of Criminal Procedure, a defendant cannot be convicted on the uncorroborated testimony of an accomplice.[12]  This claim is without merit.

Importantly, Okunno's claim is premised only upon a violation of state law.  (Docket No. 14, at 7-13).  As the Supreme Court has held repeatedly, "federal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  An error of state law "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause."  *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983).  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Dowling v. United States*, 493 U.S. 342, 352 (1990).  To fit within this narrow category, the alleged error must violate "those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which 'define the community's sense of fair play and decency.'"  *Id.* at 353 (internal citations and quotations omitted).  Okunno fails to make that showing here for reasons outlined briefly below.

Okunno's claim was considered and rejected by the state court of appeals, which found ample evidence to support the conviction from "non-accomplice" evidence:

---

[12]    The Texas accomplice-witness rule provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. art. 38.14.

In issue three, [Okunno] contends the evidence is insufficient to sustain the conviction because the testimony of an accomplice witness was not corroborated. The witness was Monica Deleon, who drove one of the vehicles to the scene of the Fort Bend robbery and in whose car Omar Medrano fled the scene and died.

Under the accomplice-witness rule, a defendant cannot be convicted based on the testimony of an accomplice unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). Corroboration is insufficient if it merely shows commission of the offense. *Id.*

To determine whether sufficient corroboration exists, we eliminate the accomplice witness's testimony from consideration and then determine whether any of the remaining evidence tends to connect the accused with commission of the crime. *Longoria v. State*, 154 S.W.3d 747, 758 (Tex. App. — Houston [14th Dist.] 2004, pet. ref'd). The corroborating evidence need not directly link the accused to commission of the offense, nor must it be sufficient in itself to establish guilt. *Id.* In other words, it is not necessary for the non-accomplice evidence to connect the defendant with every element of the crime. *Vasquez v. State*, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001). The accomplice-witness rule is satisfied if there is some non-accomplice evidence that tends to connect the accused to commission of the offense alleged. *Longoria*, 154 S.W.3d at 758.

A defendant's presence in the company of the accomplice before, during, and after commission of the offense coupled with other suspicious circumstances may tend to connect the defendant to the offense. *Thompson v. State*, 54 S.W.3d 88, 93-94 (Tex. App.— Tyler 2001, pet. ref'd) (citing *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996)). A defendant's confession may sufficiently corroborate an accomplice's testimony, so long as proof of the confession does not depend on the accomplice's testimony. *Id.* at 94 (citing *Farris v. State*, 819 S.W.2d 490, 495 (Tex. Crim. App. 1990), *overruled on other grounds by Riley v. State*, 889 S.W.2d 290, 300 (Tex. Crim. App. 1993)).

In our discussion of legal and factual sufficiency of the evidence above, we separated Deleon's testimony from the remaining evidence establishing [Okunno]'s guilt. The remaining evidence consisted primarily of [Okunno]'s oral and written statements. This non-accomplice evidence clearly connected [Okunno] with commission of the offense. At a minimum, it established that (1) [Okunno] knew in advance how the robbery was to be conducted, (2) was aware weapons were involved, (3) knew Omar wanted Deleon, Trevino, and [Okunno] to "watch his back," (4) received instructions from Omar on the way to the robbery, (5) had access to a weapon during the robbery, and (6) disposed of evidence after the robbery. Accordingly, we conclude that Deleon's testimony was sufficiently corroborated. [Okunno]'s third issue is overruled.

*Okunno*, 2008 WL 4585239, at **8-9.   Okunno does not demonstrate that the state court's conclusion was incorrect or that a constitutional violation occurred.   More importantly, he does not show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.   Therefore, Okunno fails to show that he is entitled to relief on this issue under 28 U.S.C. § 2254(d).

### D.      Failure to Make a Deadly Weapon Finding

According to the respondent, Okunno has complained that the trial court failed to make a finding that a deadly weapon was used in the commission of the underlying offense.   As the respondent notes, this claim is refuted by the judgment, which shows that the trial court did, in fact, make an affirmative finding that a deadly weapon was used to commit the underlying offense.   *See Clerk's Record*, at 84.   Okunno has filed a response to the summary judgment motion, but he does not refute the respondent's contention, which is supported by the record. Okunno does not otherwise attempt to establish that he is entitled to relief on this issue.

Although Okunno is a *pro se* litigant, his bare allegations are not sufficient to state a claim or to invoke review.   Absent evidence in the record, a federal habeas corpus court cannot consider a petitioner's "bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."   *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103 (5th Cir.), *cert. denied*, 404 U.S. 957 (1971)). The Fifth Circuit has repeatedly emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."   *Ross*, 694 F.2d at 1012 (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)).   Because Okunno's conclusory assertions are insufficient to

establish a constitutional violation, or to demonstrate a valid claim on federal habeas review, the Court does not address this allegation further.

### E.    Ineffective Assistance of Counsel

Okunno raises two allegations of ineffective-assistance against the defense attorney who represented him at trial.  In particular, Okunno contends that his attorney was deficient because he failed to request a jury instruction on (1) the Texas law of parties, and (2) the definition of reasonable doubt.  (Docket No. 1, at 7).  These claims, which were rejected on state habeas corpus review, are addressed below, following a brief overview of the legal standard that governs claims of ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to have the assistance of counsel at trial. U.S. CONST. amend. VI;  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  The right to counsel guaranteed by the Sixth Amendment includes "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).  Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."  *Strickland*, 466 U.S. at 687.

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.  Scrutiny of counsel's performance must be "highly deferential," and a reviewing

court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.   To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Okunno was represented at his trial by local criminal defense counsel Frank Fraley.  At the state habeas corpus court's request, Fraley supplied an affidavit in response to Okunno's allegations of ineffectiveness.  *See Ex parte Okunno*, No. 73,968-01 at 126-28.   After considering all of the pleadings and official court records, the state habeas corpus court summarily rejected Okunno's claim.  Presumably, the state court identified the governing legal standard found in *Strickland* and applied it to Okunno's ineffective-assistance claim.  Because Okunno repeats the same ineffective-assistance claim on federal habeas corpus review, the central question is not whether this Court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable — a substantially higher standard.'" *Knowles v. Mirzayance*, — U.S. —, 129 S. Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).  In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 129 S. Ct. at 1420.  Thus, this standard is "doubly deferential" on habeas corpus review.  *Id.*; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).  Okunno fails to show

28

that the state court's decision was unreasonable under this doubly deferential standard for reasons outlined briefly below.

### 1.      Failure to Request a Jury Instruction on the Law of Parties

Okunno complains that his counsel was deficient for failing to request a jury instruction on the Texas law of parties.  Relevant portions of the Texas law of parties are set forth above and will not be repeated here.[13]  *See* TEX. PENAL CODE §§ 7.01(a), 7.02(a)(2).  In his affidavit to the state habeas corpus court, counsel explained that he did not request a separate instruction on the law of parties because the "jury charge" already contained a "legal description" of this issue.  *Ex parte Okunno*, No. 73,968-01 at 126.  As a result, counsel believed that "there was no need to request additional instructions."  *Id.*    The record confirms that the jury was instructed in compliance with the Texas law of parties found in §§ 7.01(a) and 7.02(a)(2).  *See Clerk's Record*, at 63.  Okunno's claim to the contrary is refuted by the record.  Okunno does not show that his counsel failed to request a jury instruction or that his attorney was deficient.  It follows that Okunno fails to show that the state court's decision to reject this claim was objectively unreasonable.

### (2)      Failure to Request an Instruction on Reasonable Doubt

Okunno complains further that his counsel was deficient for failing to request a jury instruction that included a definition for reasonable-doubt standard of proof.  In his affidavit to the state habeas corpus court, defense counsel admitted that he did not request such an instruction.  Counsel explained that, in his view, "the better practice is to give no definition of reasonable doubt at all to a jury but to leave it to the jury's common sense."  *Ex parte Okunno*, No. 73,968-01 at 126. Thus, his decision was a strategic choice.

---

[13]      *See* supra note 1.

Strategic choices are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"). As the Supreme Court has repeated, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 690-91)). A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). It is well established that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

Okunno does not allege facts showing that his counsel's tactical choice was unsound. It is true that the government must prove beyond a reasonable doubt every element of a charged offense. *In re Winship*, 397 U.S. 358 (1970). A particular definition of reasonable doubt, however, is not required. *See Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (observing that "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course"). The Texas Court of Appeals has held that, to avoid giving a redundant, confusing, or logically-flawed definition where the Constitution does not require one, "the better practice is to give no definition of reasonable doubt at all to the jury." *Paulson v. State*, 28 S.W.3d 570, 573 (2000) (citing Note, *Reasonable Doubt: An Argument Against*

*Definition*, 108 HARV. L. REV. 1955 (1995)); *see also Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (repeating that "the better practice" is to not define the term "reasonable doubt").

The jury was clearly instructed in this case that the prosecution had "the burden of proving the defendant guilty . . . by proving each and every element of the offense charged beyond a reasonable doubt[.]" *Clerk's Record*, at 66.  To the extent that Okunno faults his counsel for failing to request a definition of reasonable doubt, he does not show that one was required or that the jury was instructed improperly on the burden of proof.  Based on this record, Okunno does not show that he was denied effective assistance of counsel.  More importantly, Okunno fails to demonstrate that the state court's decision to reject his ineffective-assistance claim was contrary to, or involved an unreasonable application of, the deferential *Strickland* standard.  Accordingly, Okunno is not entitled to relief on this issue.  Because Okunno has failed to establish a valid claim in this instance, the respondent is entitled to summary judgment and the petition must be denied.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).   "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court concludes that reasonable jurists would not debate whether the petition should have been resolved in a different manner. Likewise, the Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim of the denial of a constitutional right. Therefore, a certificate of appealability will not issue.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.     The respondent's motion for summary judgment (Docket No. 8) is **GRANTED**.

2.     The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

4.      The petitioner's motion for a copy of the state court records (Docket No. 13) is **DENIED** as **MOOT**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 10th day of May, 2011.

_____

Kenneth M. Hoyt
United States District Judge